22-361-cv
*Golla v. Neovasc Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-three.

PRESENT:     JOSÉ A. CABRANES,
             JOSEPH F. BIANCO,
             MYRNA PÉREZ,
                          *Circuit Judges.*

------------------------------------------------------------

PRATAP GOLLA

                           *Lead Plaintiff-Appellant,*                22-361-cv

ANDRE LUIS GONZALEZ, Individually and
On Behalf of All Others Similarly Situated,

                           *Plaintiff,*

DANIEL SIPLE, Individually and
On Behalf of All Others Similarly Situated,

                           *Consolidated-Plaintiff,*

                           v.

NEOVASC, INC., FRED COLEN, CHRISTOPHER CLARK, BILL LITTLE, SHMUEL BANAI,

                           *Defendants-Appellees.*

------------------------------------------------------------

| FOR LEAD PLAINTIFF-APPELLANT: | OMAR JAFRI (Joshua B. Silverman, *on the brief*), Pomerantz LLP, Chicago, IL. |
|---|---|
| FOR DEFENDANTS-APPELLEES: | BRIAN P. MILLER (Peter J. Isajiw, Samantha J. Kavanaugh, Ross E. Linzer, *on the brief*), King & Spalding LLP, New York, NY, Miami, FL. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Philip M. Halpern, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Pratap Golla sued Defendant-Appellant Neovasc Inc. and several of its employees alleging that they violated securities laws[1] by omitting or making untrue statements of material fact about the Reducer, a device developed to treat refractory angina.[2]

The Reducer became commercially available in the European Union in 2015. As part of a long-term effort to bring it to market in the United States, Neovasc frequently participated in discussions with the United States Food and Drug Administration ("FDA"). In February 2019, Neovasc disclosed that an FDA review team "recommend[ed] collection of further . . . blinded data" before its submission of a pre-market approval application. J. App'x at 159. Rather than conduct an additional pre-market study, Neovasc submitted its application for pre-market approval along with a proposal for an additional post-approval clinical study in the United States and Canada. In October 2020, an FDA advisory panel voted against approving the application for the Reducer, a recommendation that the FDA accepted in January 2021. **[JA 25–26, 28]**. Before its vote, members of the panel expressed concern that an additional study had not been completed. After the advisory panel's vote, Neovasc's stock price dropped by 42 percent or $0.77 per share, to close at $1.06 per share. **[JA 61].**

Plaintiff principally alleges that Defendants misled investors about (1) their communications with the FDA, (2) the strength of the clinical data already collected to demonstrate efficacy, and (3) whether there was a sound basis to approve a pre-market application for the Reducer, which would allow Neovasc to market it in the United States. The District Court dismissed Golla's claims with

---

[1] The specific securities laws are Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b); Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

[2] Refractory angina is condition "that occurs when there is an inadequate blood supply to the heart muscle." Def.'s Br. at 1.

prejudice, ruling that he failed to adequately allege scienter and that none of the statements could be classified as a material misrepresentation or omission. Golla appeals.

We review the District Court's grant of Defendants' motion to dismiss *de novo*. *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007). And we review its decision to do so with prejudice for abuse of discretion. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). We assume the parties' familiarity with the further underlying facts, the procedural history of the case, and the issues on appeal.

## I. Section 10(b) and Rule 10b-5 claim

We first consider whether the District Court properly dismissed Golla's claim that Defendants violated Section 10(b) and Rule 10b–5. Under Section 10(b), it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate[.]" 15 U.S.C. § 78j(b). Under Rule 10b–5, which implements Section 10(b), it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(b).

"To state a claim under Rule 10b–5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). These allegations must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b).[3]

We focus our review on whether Plaintiff adequately alleged scienter. Plaintiff may satisfy Rule 10b–5's scienter requirement by showing either (1) "that the defendants had both motive and opportunity to commit the fraud" or (2) "strong circumstantial evidence of conscious misbehavior

---

[3] The PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001) (internal alterations omitted) (quoting 15 U.S.C. § 78u–4(b)(1) (1994 & Supp. V 1999)). Similarly, Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.* 12 F.3d 1170, 1175 (2d Cir. 1993)).

or recklessness." *ATSI Comm'ns*, 493 F.3d at 99. The driving "inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007). The inference must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

To adequately plead motive, "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). "Motives that are generally possessed by most corporate directors and officers do not suffice . . . ." *Id.* Golla asserts only a type of motive that does not suffice—the common desire of most corporate directors and officers to earn bonuses.

"To survive dismissal under the 'conscious misbehavior' theory, the appellants must show that they alleged reckless conduct by the appellees, which is 'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978)). "Although this is a highly fact-based inquiry, generalities can be drawn." *Kalnit*, 264 F.3d at 142. "Securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." *Id.* (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).

Golla fails to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc.*, 551 U.S. at 326 (quoting § 78u-4(b)(2)). Much of Golla's scienter allegation rests on the concern expressed by members of the FDA advisory panel that Neovasc had not yet performed an additional blinded study. Their statements, he contends, are evidence that Defendants knew or should have known that the application would not be approved and that they concealed the FDA's concerns. However, the more compelling inference is that Neovasc appreciated the FDA's concerns and decided—given its financial instability and the possibility of a study that would cost tens of millions of dollars and years to complete—that submitting a proposal for a post-approval study alongside its application was preferable. Moreover, rather than demonstrate that Defendants concealed the FDA's concerns, the more compelling inference is that the advisory panel members' statements accord with Neovasc's February 2019 disclosure that the FDA "*recommend[ed]* collection of further pre-market clinical data." J. App'x at 159 (emphasis added). Golla does not plead any facts demonstrating that the FDA required rather than recommended additional data.

Because Golla failed to adequately allege scienter, the District Court properly dismissed his claim that Defendants violated Section 10(b) and Rule 10b–5.

4

## II.     Section 20(a) claim

We next consider whether the District Court properly dismissed the claim that the individual Defendants violated Section 20(a). "Section 20(a) . . . provides that individual executives, as 'controlling person[s]' of a company, are secondarily liable for their company's violations of the Exchange Act." *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting 15 U.S.C. § 78t(a)). Accordingly, a Section 20(a) violation must be "predicated on a primary violation of securities law." *Rombach*, 355 F.3d at 177–78. As explained above, Golla failed to adequately plead a primary violation of securities law. His Section 20(a) claim thus necessarily fails, and the District Court properly dismissed it. *See id.* at 178.

## III.     Dismissal with prejudice

We last consider whether the District Court abused its discretion in denying Golla an opportunity to file a second amended complaint. Federal Rule of Civil Procedure 15(a) dictates that "leave to amend 'shall be freely given when justice so requires.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P 15(a)). "When a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'" *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed. 1989)). Nonetheless, "[t]he decision to grant or deny leave to amend rests within the discretion of the trial court." *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 2000). Where a court denies a plaintiff leave to amend, they "have usually already had one opportunity to plead fraud with greater specificity . . . , or the defective allegations were made after full discovery in a related case[.]" *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (citations omitted). We have found denial of leave to amend to be particularly appropriate where "plaintiff's counsel did not advise the district court how the complaint's defects would be cured." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).

We conclude that the District Court did not abuse its discretion. Golla's counsel did not advise the District Court on how the complaint's defects would be cured. In addition, although the usual practice is to grant leave to amend, Golla already had the opportunity to amend his complaint upon consolidation. He took advantage of that opportunity, adding approximately 100 paragraphs to his amended complaint.

## CONCLUSION

To summarize, we conclude the following:

(1) The District Court properly dismissed Golla's Section 10(b) and Rule 10b–5 claim because he failed to adequately allege scienter.

(2) The District Court also properly dismissed Golla's Section 20(a) claim because it requires a primary violation of the securities laws, which Golla failed to adequately allege.

(3) The District Court did not abuse its discretion in dismissing Golla's claims with prejudice because (a) his counsel did not advise the District Court on how the complaint's defects would be cured, and (b) he had already had the opportunity to amend his complaint.

We have reviewed all of the arguments raised by Defendants on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the February 2, 2022 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6